**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 08-cv-00669-CMA-MJW

MARK KOHUT,

      Plaintiff,

v.

HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, a Connecticut insurance
company, and
GROUP SHORT TERM DISABILITY, LONG TERM DISABILITY AND LIFE PLAN FOR
EMPLOYEES OF KJ ENTERPRISES, an ERISA welfare benefit plan,

      Defendants.

---

## ORDER AND MEMORANDUM OF DECISION

---

      This is an Employee Retirement Income Security Act ("ERISA") case.  Plaintiff
alleges that Defendants improperly denied his claim for long-term disability benefits
under an ERISA-governed plan, breached a fiduciary duty to him, and wrongfully
withheld requested plan documents.  This matter comes before the Court on:
(1) "Plaintiff's Rule 72(a) Objection to Magistrate Order Denying Discovery," (Doc. # 12);
and (2) "Plaintiff's Motion for Partial Summary Judgment Regarding the Proper
Standard of Review in this ERISA-Governed Case," (Doc. # 20).  Jurisdiction is proper
pursuant to 29 U.S.C. §§ 1132(e)(1), 1132(f), and 28 U.S.C. § 1331.

**FACTS**

**1.     *Factual Background***

Pursuant to his employment as a Plumbing Project Manager with KJ Enterprises, Plaintiff was insured under a group long-term disability insurance policy (the "Policy"). The Policy was provided pursuant to the Group Short Term Disability, Long Term Disability and Life Plan for Employees of KJ Enterprises (the "Plan"). Defendant Hartford Life and Accident Insurance Company ("Defendant Hartford") was both the issuer of the Policy, and the administrator of the Plan.

The Plan recites that Defendant Hartford has "full discretion and authority to determine the eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." Moreover, the Plan provides that proof of a long-term disability claim "must be satisfactory" to Defendant Hartford.

In September 2004, Plaintiff stopped working for KJ Enterprises due to an alleged disability. Plaintiff submitted a claim for long-term disability benefits to Defendant Hartford, and Defendant Hartford approved this claim effective December 2004. In June 2007, Defendant Hartford notified Plaintiff that it was terminating his benefits effective May 31, 2007.

On December 5, 2007, Plaintiff's counsel faxed an appeal letter to Defendant Hartford. The letter referenced exhibits that would be mailed separately. By letter dated December 12, 2007, Defendant Hartford acknowledged receipt of Plaintiff's appeal, and, on December 13, 2007, Defendant Hartford received Plaintiff's exhibits.

By letter dated January 4, 2008, Plaintiff's counsel submitted copies of correspondence with one of Plaintiff's physicians, and asked Defendant Hartford to "add this letter to your claim file and consider it in your review of [Plaintiff's] appeal."

On February 19, 2008, Defendant Hartford prepared an "Appeal Recommendation/Plan" for its claim file. This document recited, *inter alia*, that Defendant Hartford would refer the file to two independent physicians for review, and request that these physicians contact Plaintiff's own treating physicians. The document moreover stated that the "complete appeal received date" had been revised to January 8, 2009, the date Defendant Hartford had received Plaintiff's additional evidence. By letter dated February 19, 2008, Defendant Hartford informed Plaintiff's counsel that it would need additional time to complete the review of Plaintiff's appeal in light of the pending medical review.

By letter dated February 26, 2008, Plaintiff's counsel responded to Defendant Hartford's February 19, 2008, letter, disagreeing with Defendant Hartford's position. Specifically, in the letter, Plaintiff's counsel contended that Plaintiff's appeal was effective December 5, 2007, not January 4, 2008, and that, under relevant federal regulations, a decision on this appeal had been due on January 19, 2008.[1] Moreover, Plaintiff's counsel disagreed with Defendant Hartford that referral of Plaintiff's file to independent physicians for review constituted a "special circumstance" giving

---

[1] As indicated above, Defendants' instant position is that Plaintiff's appeal was effective January 8, 2008. Plaintiff's instant position is that Defendant Hartford's decision on his appeal was due on January 21, 2008.

Defendant Hartford additional time to review Plaintiff's appeal under applicable federal regulations. On February 29, 2008, Defendant Hartford responded to Plaintiff's counsel's letter.

During the month of March 2008, Defendant Hartford requested information from one of Plaintiff's treating physicians, and received reports from two independent physicians. On April 4, 2008, Defendant Hartford recorded its decision on Plaintiff's appeal. In so doing, Defendant Hartford summarized the findings of the two reviewing physicians, and concluded that "the weight of the evidence does not support the severity of symptoms claimed by [Plaintiff]." By letter dated April 4, 2008, Defendant Hartford rendered its decision denying Plaintiff's appeal.

## 2.   *Procedural History*

On April 2, 2008, two days before Defendant Hartford denied Plaintiff's appeal, Plaintiff filed a complaint in this Court alleging: (1) improper denial of his appeal for benefits; (2) breach of fiduciary duty; and (3) wrongful withholding of requested Plan documents.[2]

On May 19, 2008, Magistrate Judge Michael J. Watanabe held a scheduling conference in this matter in which he disallowed all discovery in this case apart from Defendant Hartford's production of the administrative record — *i.e.*, all documents

---

[2]   Plaintiff's wrongful withholding claim relates to Defendant Hartford's alleged actions between June 2007 and December 2007, which are not relevant to the instant motions.

Defendant Hartford had generated, received, or reviewed in relation to Plaintiff's disability claim, including the Plan document.

On June 2, 2008, Plaintiff objected to the magistrate judge's order allowing no extra-record discovery. Specifically, Plaintiff argued that discovery should be permitted into Defendant Hartford's claims administration process to determine whether its denial of his appeal had been arbitrary and capricious. On August 8, 2008, Defendants responded to Plaintiff's objection. On August 25, 2008, Plaintiff replied.

On August 25, 2008, Plaintiff filed a motion for partial summary judgment regarding the proper standard of review in this case. Specifically, Plaintiff argued that Defendant Hartford had violated various federal regulations by untimely deciding his appeal, and that this violation entitled him to *de novo* review of Defendant Hartford's appeal decision. Plaintiff also argued that a newly enacted Colorado statute entitled him to *de novo* review of Defendant Hartford's decision. On September 17, 2008, Defendants responded to Plaintiff's motion. On October 6, 2008, Plaintiff replied. These matters are fully briefed and ripe for review.

**ANALYSIS**

*1.*     ***Standard of Review for Objections to Magistrate Judge's Order***

District courts review magistrate judges' orders concerning non-dispositive motions under a "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A) (2006); Fed.R.Civ.P. 72(a) (2008). Under the clearly erroneous standard of review, the magistrate judge's findings should not be rejected merely because the

court would have decided the matter differently.  *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985).  Rather, the district court must affirm the decision of the magistrate judge unless "'on the entire evidence[, the district court] is left with the definite and firm conviction that a mistake has been committed.'"  *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. U. S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

**2.     Evaluation**

The parties agree that the standard of review in this case could affect whether the magistrate judge erred in disallowing extra-record discovery.  Specifically, the parties agree that extra-record discovery is generally more appropriate in cases governed by a *de novo* standard of review, and that different case law controls the propriety of extra-record discovery depending upon whether a *de novo*, as opposed to a deferential, standard governs Plaintiff's claims.  Accordingly, the Court will first address Plaintiff's motion for partial summary judgment regarding the proper standard of review, and then address his instant objections to the magistrate judge's order.

**a.     Plaintiff's Motion for Partial Summary Judgment Regarding the Proper Standard of Review**

With respect to the proper standard of review in this case, Plaintiff argues that both federal regulations and a newly enacted Colorado statute entitle him to *de novo* review of Defendant Hartford's appeal decision.  The Court will address each contention in turn.

### 1.     De Novo *Review Under Federal Regulations*

ERISA permits an employee denied benefits under an ERISA-governed plan to challenge that denial in federal district court.  *See* 29 U.S.C. § 1132(a)(1)(B) (2006). "ERISA does not set out the appropriate standard of review for actions under § 1132(a)(1)(B)," but under Supreme Court precedent, a district court must review a denial of plan benefits under a *de novo* standard of review unless the plan provides to the contrary.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109, 115 (1989). If a "plan provides to the contrary by granting the administrator or fiduciary discretionary authority to determine eligibility for benefits," the district court must apply an "arbitrary and capricious" standard of review.  *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2348 (2008) (citation, internal quotation marks, and emphasis omitted); *Weber v. GE Group Life Assurance Co.*, 541 F.3d 1002, 1010 (10th Cir. 2008).

Assuming that an "arbitrary and capricious" standard of review applies, a conflict of interest arising from a single entity acting as both a policy insurer and a plan administrator does not affect this deferential standard of review; instead, such a conflict is merely one factor the district court must weigh in determining whether a plan administrator abused its discretion in deciding a claim.  *Glenn*, 128 S. Ct. at 2348–52. Moreover, in weighing this factor, the district court must "decrease the level of deference given in proportion to the seriousness of the conflict."  *Weber*, 541 F.3d at 1010 (citations omitted).

In the instant case, Plaintiff does not dispute that the Plan granted Defendant Hartford discretionary authority to determine his eligibility for benefits. Plaintiff nonetheless contends that *de novo* review of his claims is appropriate because Defendant Hartford violated various federal regulations by untimely deciding his appeal. For the following reasons, the Court disagrees.

Federal regulations implementing ERISA require a plan administrator to decide a disability claim within a specified period of time. *See, e.g.*, 29 C.F.R. § 2560.503-1(i)(3)(i) (2008) (providing plan administrator forty-five days from receipt of request for plan review to notify employee of its claim determination); *id.* § 2560.503-1(i)(1)(i) (providing plan administrator with an additional forty-five days if it determines that "special circumstances" require such an extension). Moreover, these regulations recite that if a plan fails to follow these requirements, "a claimant shall be *deemed to have exhausted the administrative remedies* available under the plan and shall be entitled to pursue any available remedies [in federal district court] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." *Id.* § 2560.503-1(l) (emphasis added).

Plaintiff argues that Defendant Hartford untimely notified him of its appeal decision, and that this untimely notification mandates *de novo* review of his claims. Specifically, Plaintiff points to the Department of Labor's ("DOL's") explanatory language accompanying the notification of the final rule revising 29 C.F.R. § 2560.503-1(h)(4) — the predecessor regulation to 29 C.F.R. § 2560.503-1(l) — which had stated that "[i]f the

decision on review is not furnished within [a specified period of time], the claim shall be *deemed denied* on review."  29 C.F.R. § 2560.503-1(h)(4) (1999) (emphasis added).  In explaining its motivation for changing this language to the "deemed exhausted" language cited above, the DOL recited, in part, that "[its] intentions in including [section 2560.503-1(l)] in the proposal were to clarify that the procedural minimums of the regulation are essential to procedural fairness and that a decision made in the absence of the mandated procedural protections should not be entitled to any judicial deference." ERISA Claims Procedures, 65 Fed. Reg. 70,246, 70,255 (Nov. 21, 2000).  Plaintiff argues that this language, along with Tenth Circuit law interpreting section 2560.503-1(h)(4), mandate *de novo* review of his claims.  The Court disagrees.

First, as to the probative force of the DOL's explanatory language accompanying notification of the final rule adopting section 2560.503-1(l), the Court finds this language irrelevant because an agency's interpretation of its own regulation is only entitled to judicial deference if the language of the regulation is ambiguous.  *Christensen v. Harris County*, 529 U.S. 576, 588 (2000).  In the instant case, the language of section 2560.503-1(l) is not ambiguous.  On the contrary, the regulation provides that if a plan fails to follow mandated procedural requirements, then the claimant is deemed to have exhausted his administrative remedies, and he may bring a federal lawsuit to vindicate his rights.  *See* 29 C.F.R. § 2560.503-1(l) (2008).  The regulation does *not* purport to state a standard of review under which such an action will be governed.  *See id.* Accordingly, because section 2560.503-1(l) is not ambiguous on the question of the

9

proper standard of review that applies in this case — indeed, the regulation does not speak to this issue at all — the agency's explanatory language on this point is entitled to no judicial deference. *Christensen*, 529 U.S. at 588; *see also, e.g.*, *Goldman v. Hartford Life and Accident Ins. Co.*, 417 F. Supp. 2d. 788 (E.D. La. 2006) (finding the DOL's explanatory language entitled to no judicial deference because "the amended section 2560.503-1 simply does not speak to the issue of the standard of review").

Second, as to the precedential force of earlier Tenth Circuit law interpreting section 2560.503-1(h)(4), the Tenth Circuit has specifically reserved the question of whether such law applies to section 2560.503-1(l). *See Finley v. Hewlett-Packard Co. Employee Bens. Org. Income Protection Plan*, 379 F.3d 1168, 1175 n.6 (10th Cir. 2004). The Court finds such precedent without force because it constitutes a gloss upon a now-superceded regulation. *See, e.g.*, *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 631–32 (10th Cir. 2003) (construing section 2560.503-1(h)(4) in light of the standards enunciated in *Firestone*, and holding that "when substantial violations of ERISA deadlines result in the claim's being automatically deemed denied on review, the district court must review the denial *de novo*, even if the plan administrator has discretionary authority to decide claims"); *Goldman*, 417 F. Supp. 2d. at 798 (noting that *"Gilbertson* is not directly applicable to this case because that case involved an earlier version of the [DOL's] regulations concerning the ERISA administrative review process"). Moreover, the Court notes the rationale undergirding the Supreme Court's recent decision in *Glenn* appears to counsel against the Tenth Circuit's eventual

reaffirmance of *Gilbertson*.  Specifically, in *Glenn*, the Supreme Court suggested that "special burden-of-proof rules, or other special procedural or evidentiary rules" were neither necessary nor desirable in ERISA cases.  128 S. Ct. at 51.  Accordingly, the Court rejected special rules altering the deferential standard of review in ERISA cases where the plan administrator was also the payer.  *Id.* at 2350 ("We do not believe that *Firestone's* statement implies a change in the *standard* of review, say, from deferential to *de novo* review." [emphasis in original]).  Instead, the Court found that such a conflict of interest was merely one factor that a district court must consider in determining whether a plan administrator's denial of benefits was lawful, and held that the importance of this factor would vary depending upon the nature of the conflict.  *Id.*

This Court respectfully submits that, were the Tenth Circuit to decide whether *Gilbertson* remains good law after *Glenn*, it would hold that an untimely denial of a benefits appeal is merely one factor — along with a conflict of interest — that the district court must consider in determining whether such a denial was lawful.  Moreover, this Court predicts that, as with a conflict of interest, the Tenth Circuit would merely hold that the importance of this factor varies depending upon the case-specific nature of the delay — *i.e.*, its causes, length, and any resultant prejudice to the claimant.  *See, e.g.*, *Weber*, 541 F.3d at 1010 (holding that the district court must "decrease the level of deference given in proportion to the seriousness of the conflict," and stating that "[t]his approach mirrors the *Glenn* Court's method of accounting for the conflict-of-interest factor").

Alternatively, this Court finds that, even assuming *Gilbertson* remains good law after *Glenn*, it does not mandate *de novo* review of Plaintiff's instant claims. The plaintiff in *Gilbertson* appealed a denial of her benefits claim to the plan administrator, but never received notification as to whether her appeal had been accepted or rejected. 328 F.3d at 629–30. Instead, after "more than six months of radio silence," the plaintiff treated her claim has having been "deemed denied" under section 2560.503-1(h)(4), and filed suit. *Id.* at 630–31, 636. Addressing the proper standard of review to apply in the case, the Tenth Circuit reasoned that "[d]eference to the administrator's expertise is inapplicable where the administrator has failed to apply his expertise to a particular decision," and held that "substantial violations of ERISA deadlines result[ing] in the claim's being automatically deemed denied on review" required the district court to apply a *de novo* standard of review. *Id.* at 631–33; *see also Geddes v. United Staffing Alliance Employee Med. Plan*, 469 F.2d 919, 926 (10th Cir. 2006) (relating *Gilbertson*'s "core holding" as: "ERISA administrators are not entitled to deference for 'deemed denied' decisions made by operation of law rather than the exercise of discretion" [further internal quotation marks and citation omitted]). The *Gilbertson* Court moderated its holding by adopting a "substantial compliance" rule pursuant to which plan administrators are deemed in compliance with ERISA deadlines if any delay is: (1) inconsequential; and (2) in the context of ongoing, good-faith exchange of information between the administrator and the claimant. *Id.* at 635; *see also Finley*, 379 F.3d at 1174.

In the instant case, the Court finds *Gilbertson*'s core holding inapplicable to Plaintiff's claims because Plaintiff's appeal was not "deemed denied" by operation of law. Instead, this appeal was actually denied through exercise of Defendant Hartford's discretion on April 4, 2008. Accordingly, the Court finds that Plaintiff cannot identify "substantial violations of ERISA deadlines *result[ing] in the claim's being automatically deemed denied on review*" that would trigger automatic *de novo* review of his claims. *Gilbertson*, 328 F.3d at 631 (emphasis added). Alternatively, even assuming that *Gilbertson*'s core holding is applicable to the case at bar, the Court finds that Defendant Hartford has satisfied the "substantial compliance" test. Specifically, even assuming that Plaintiff's factual representations and legal suppositions are all correct,[3] then Defendant Hartford's appeal decision was due on January 21, 2008, at the earliest, and Defendant Hartford's April 4, 2008, decision was at most seventy-four days late.[4] The Court finds that, as a matter of law, this delay was inconsequential in light of the exchange of information between Defendant Hartford and Plaintiff between December 2007 and April 2008, and particularly in the absence of any evidence suggesting Defendant Hartford acted in bad faith, or that its delay prejudiced Plaintiff. *See, e.g.*, *Neathery v. Chevron Texaco Corp. Group Accident Policy No. Ok 826458*, No. 05 cv 1883 JM (AJB), 2006 WL 4690902, at *9 (S.D. Cal. July 31, 2006) (finding that, despite

_____

[3] The Court notes that no party addressed when an appeal is deemed filed under ERISA regulations, nor what constitutes "special circumstances" permitting an extension of time under these regulations.

[4] By contrast, if Defendant Hartford's factual representations and legal suppositions are all correct, then its appeal decision was due on April 7, 2008.

13

129-day delay, plan administrator had substantially complied with ERISA deadlines under Ninth Circuit law because it had engaged in ongoing communications with the claimant); *Seger v. ReliaStar Life*, No. 3:04 CV 16/RV/MD, 2005 WL 2249905, at *11-12 (N.D. Fla. Sept. 14, 2005) (finding that, despite ninety-day delay, plan administrator had substantially complied with ERISA deadlines under Ninth, Tenth, and Eleventh Circuit law because it made good faith attempts to comply with ERISA strictures, and kept the claimant apprised of her claim status).

Based on the foregoing, the Court finds no merit Plaintiff's argument that federal regulations entitle him to *de novo* review of Defendant Hartford's appeal decision.

### 2. De Novo *Review Under Colorado Statute*

Plaintiff next contends that a newly enacted Colorado statue entitles him to *de novo* review. Specifically, Plaintiff points to Colorado Revised Statutes section 10–3–1116, approved by the Colorado General Assembly on June 6, 2008, which provides in pertinent part:

> (2)  An insurance policy, insurance contract, or plan that is issued in this state that offers health or disability benefits shall not contain a provision purporting to reserve discretion to the insurer, plan administrator, or claim administrator to interpret the terms of the policy, contract, or plan or to determine eligibility for benefits.
>
> (3)  An insurance policy, insurance contract, or plan that is issued in this state shall provide that a person who claims health, life, or disability benefits, whose claim has been denied in whole or in part, and who has exhausted his or her administrative remedies, shall be entitled to have his or her claim reviewed *de novo* in any court with jurisdiction and to a trial by jury.

14

Colo. Rev. Stat. § 10–3–1116(2)–(3) (2008). Plaintiff claims that this statute mandates *de novo* review of his claims, and that it is saved from preemption under ERISA' so-called savings clause.[5] Defendant counters that ERISA's savings clause does not exempt the statute from preemption, and that the statute does not apply retroactively. For the following reasons, the Court finds that this statute is not preempted by ERISA, but that it also does not apply retroactively.

### *(i)    Preemption by ERISA*

ERISA's preemption clause broadly recites that "[e]xcept as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C § 1144(a) (2006). ERISA's savings clause, however, recites that "[e]xcept as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." *Id.* § 1144(b)(2)(A). Finally, ERISA's deemer clause (subparagraph (B)) provides that self-funded benefits plans are not to be deemed insurance companies for the purpose of any state laws purporting to regulate such companies. *See id.* § 1144(b)(2)(B).

In the instant case, the parties do not dispute that section 10–3–1116 "relates to" the Plan, nor that ERISA's deemer clause is irrelevant because the Plan is not self-funded. Accordingly, the question before the Court is whether section 10–3–1116

---

[5]  Plaintiff does not claim that this statute entitles him to trial by jury.

"regulates insurance" under section 1144(b)(2)(A), and is thus saved from preemption by ERISA.

A state law "regulates insurance" under section 1144(b)(2)(A) if it: (1) is "specifically directed toward entities engaged in insurance;" and (2) "substantially affect[s] the risk pooling arrangement between the insurer and the insured." *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 328, 341–42 (2003). The parties agree that section 10–3–1116 is specifically directed toward entities engaged in insurance, but disagree as to whether it substantially affects the risk pooling arrangement between the insurer and the insured. For the following reasons, the Court finds that it does.

In *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355 (2002), the Supreme Court held that an Illinois state statute requiring Health Maintenance Organizations (HMOs) to provide independent physician review of the medical necessity of covered services was a law "regulat[ing] insurance" within the meaning of section 1144(b)(2)(A). In so holding, the Court applied pre-*Miller* preemption tests addressing: (1) the "common-sense enquiry" into whether a state law regulates insurance; and (2) the three so-called "McCarran-Ferguson" factors.[6] *Id.* at 372–75. Although the Court did not explicitly address whether the Illinois statute substantially affected the risk pooling arrangement between the insurer and the insured, the Court noted that "the interpretation of insurance contracts is at the 'core' of the business of insurance," and stated that

---

[6] The McCarran-Ferguson factors address whether a law: (1) has the effect of transferring or spreading a policyholder's risk; (2) is an integral part of the policy relationship between the insurer and the insured; and (3) is limited to entities within the insurance industry. *See, e.g.*, *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129 (1982).

independent review provisions "affect[] the 'policy relationship' between [insurer] and covered persons . . . ." *Id.* at 373–74.

In *Miller*, the Supreme Court reaffirmed the holding of *Rush Prudential*, albeit again without explicitly addressing whether independent review provisions substantially affect the risk pooling arrangement between the insurer and the insured. 538 U.S. at 1477-78. This lack of explanation notwithstanding, the Tenth Circuit has read *Miller* as standing for the proposition that "independent review provisions . . . substantially affect the type of risk pooling arrangements that insurers may offer." *Kidneigh v. Unum Life Ins. Co. of Am.*, 345 F.3d 1182, 1187 (10th Cir. 2003). Moreover, the Tenth Circuit recites that "[r]ecent Supreme Court and Tenth Circuit cases indicate that, while the precise formulation of the test for analyzing ERISA preemption cases has evolved, the holdings of prior cases are still valid as to . . . preemption." *Id.* at 1188 (referring specifically to the decision in *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987)).

In the instant case, the Court finds that section 10–3–1116 is a law "regulat[ing] insurance" within the meaning of section 1144(b)(2)(A) under the precedential force of *Rush Prudential*, *Miller*, and *Kidneigh*. Specifically, the Court finds no functional difference between a state statute requiring independent review of the medical necessity of covered services by a physician, and a state statute preventing an insurer from reserving discretion to interpret the terms of a policy, or, relatedly, requiring it to agree by contract to *de novo* review of an employee's benefits claim by a court. In either case, the statute affects the policy relationship between the insurer and the

insured by affecting the interpretation of the insurance contract, which the Supreme Court has noted is "at the 'core' of the business of insurance." *Rush Prudential*, 536 U.S. at 373–74. Moreover, in either case, elimination of the insurer's sole discretion in deciding whether to accept or deny a claim makes it more likely that the insurer will pay more money in claims, and thus that the insured will pay higher premiums. Accordingly, to whatever extent Supreme Court and Tenth Circuit precedent does not already foreclose the question in the affirmative, this Court independently finds that section 10–3–1116 is a law "regulat[ing] insurance" because it "substantially affect[s] the risk pooling arrangement between the insurer and the insured." *Miller*, 538 U.S. at 341–42; *see also Am. Council of Life Insurers v. Watters*, 536 F. Supp. 2d 811 (W.D. Mich. 2008) (finding that *Rush Prudential* is good law and controlling on the question of whether a state regulation preventing insurers from including discretionary clauses in their insurance contracts is preempted, and also finding that such a regulation independently satisfies the second prong of the *Miller* test); *Standard Ins. Co. v. Morrison*, 537 F. Supp. 2d 1142 (D. Mont. 2008) (same).

Based on the foregoing, the Court finds that section 10–3–1116 is a law "regulat[ing] insurance" within the meaning of section 1144(b)(2)(A), and that it therefore is saved from preemption by ERISA.

### *(ii)      Retroactivity of Section 10–3–1116*

Defendants next argue that, even assuming section 10–3–1116 is not preempted by ERISA, it does not apply retroactively.  For the following reasons, the Court agrees.

Absent legislative intent to the contrary, Colorado state statues are presumed to operate prospectively.  *City of Colorado Springs v. Powell*, 156 P.3d 461, 464 (Colo. 2007); *see also* Colo. Rev. Stat. § 2–4–202 (2008) ("A statute is presumed to be prospective in its operation.").  "To overcome this presumption, a statute must clearly reveal a legislative intent that it be applied retroactively."  *Giguere v. SJS Family Enterprises, Ltd.*, 155 P.3d 462, 469 (Colo. Ct. App. 2006) (citing *Ficarra v. Dep't of Regulatory Agencies*, 849 P.2d 6 (Colo. 1993)).  Although "express language of retroactive application is not necessary to find that a law is intended to apply retroactively," *City of Golden v. Parker*, 138 P.3d 285, 290 (Colo. 2006), a clear legislative intent to this effect must generally appear upon the face of the statute, or in its legislative history.  *See, e.g.*, *Powell* 156 P.3d 465–68 (finding no clear legislative intent to apply statute retroactively after examination of the face of a statute, and its legislative history); *cf. Giguere*, 155 P.3d at 469 (finding clear legislative intent to apply statute retroactively where the statute expressly states that "the following sections shall apply to all common interest communities created within the state before [the statute's date of enactment]").

In the instant case, the Court finds no evidence suggesting that the Colorado General Assembly intended section 10–3–1116 to apply retroactively.  First, upon its

19

face, the relevant subsections of section 10–3–1116 merely provide that insurance policies, contracts, or plans: (1) "*shall not* contain a provision purporting to reserve discretion to the insurer;" and (2) "*shall provide* that a person . . . whose claim has been denied in whole or in part . . . shall be entitled to have his or her claim reviewed *de novo* . . . ." Colo. Rev. Stat. § 10–3–1116(2)–(3) (2008) (emphasis added). By virtue of their verb tenses, these subsections both contemplate the *future* drafting of substantive provisions in insurance contracts that could potentially affect the standard of review.[7] Second, with respect to section 10–3–1116's legislative history, the only legislative document either party has cited is the legislative act approving section 10–3–1116. *See* Act Concerning Strengthening Penalties for the Unreasonable Conduct of an Insurance Carrier, and Making an Appropriation in Connection Therewith, ch. 422, 2008 Colo. Leg. Serv. 422 (West 2008). In this act, the Colorado General Assembly recites that the statute "shall take effect [on] . . . August 6, 2008." *Id.* Accordingly, this act provides no support for the conclusion that the General Assembly intended the statute to apply retroactively.

Based on the foregoing, the Court finds no evidence of legislative intent to apply section 10–3–1116 retroactively, and accordingly finds that it operates prospectively.

---

[7] The Court notes in this regard that, although compliance with section 10–3–1116(2) would seem to mandate *de novo* review under *Firestone*, compliance with section 10–3–1116(3) would seem far less likely to effectuate this result as it remains at least highly questionable whether parties may alter the standard of review — much less create a right to trial by jury — by contract.

As such, the Court finds no merit in Plaintiff's contention that section 10–3–1116 entitles him to *de novo* review of Defendant Hartford's appeal decision.

**b.  Plaintiff's Objections to the Magistrate Judge's Order**

Having determined that Plaintiff's claims are subject to the "arbitrary and capricious" standard of review because the Plan grants discretionary authority to Defendant Hartford to determine Plaintiff's eligibility for benefits, the Court turns to whether the magistrate judge nonetheless erred in disallowing all extra-record discovery.  For the following reasons, the Court finds that he did.

Tenth Circuit law is conflicted on the permissible scope of discovery in cases governed by a deferential standard of review.  On the one hand, the Tenth Circuit has repeatedly, and without apparent equivocation, held that "in reviewing a plan administrator's decision under the arbitrary and capricious standard, the federal courts are limited to the administrative record — the materials compiled by the administrator in the course of making his decision."  *Weber*, 541 F.3d at 1011 (citing *Fought v. Unum Life Ins. Co. of Am.*, 397 F.3d 997, 1003 (10th Cir. 2004)); *see also, e.g.*, *Hall v. Unum Life Ins. Co. of Am.*, 300 F.3d 1197, 1201 (10th Cir. 2002) (same).  This rule derives from Tenth Circuit cases in which the Court explicitly considered whether claimants could augment the administrative record with after-developed evidence probative of their eligibility for benefits.  *See, e.g.*, *Sandoval v. Aetna Life and Cas. Ins. Co.*, 967 F.2d 377, 380–81 (10th Cir. 1992) (considering whether claimant could augment the administrative record with a psychologist's report "developed long after the review

process" to prove his eligibility for disability benefits, and holding "the district court generally may consider only the arguments and evidence before the administrator at the time it made that decision"); *Woolsey v. Marion Labs. Inc.*, 934 F.2d 1452, 1460 (10th Cir. 1991) (considering whether claimant could augment the administrative record with additional argumentation pertaining to his eligibility for retirement benefits, and holding that "we consider only the facts before the Administrators at the time of their decision"). In explaining its rationale for adopting this rule, the Tenth Circuit recited:

> A primary goal of ERISA was to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously. Permitting or requiring district courts to consider evidence from both parties that was not presented to the plan administrator would seriously impair the achievement of that goal. If district courts heard evidence not presented to plan administrators, employees and their beneficiaries would receive less protection than Congress intended.

*Sandoval*, 967 F.2d at 380 (quoting *Perry v. Simplicity Engineering*, 900 F.2d 963, 967 (6th Cir. 1990)).

On the other hand, the Tenth Circuit holds that, under the "arbitrary and capricious" standard of review, the district courts must determine whether a plan administrator's interpretation of a plan "was reasonable and made in good faith." *Weber*, 541 F.3d at 1010 (quoting *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1189 (10th Cir. 2007)). In making this determination, district courts must dial back their deference to the plan administrator's decision in proportion to the seriousness of any conflict of interest arising from that administrator simultaneously acting as a policy insurer. *Id.* Specifically, assuming that a plan's

language is ambiguous, the district courts must "take a hard look and determine'
whether [the administrator's] decision was arbitrary in light of its conflict of interest." *Id.*
(quoting *Fought*, 379 F.3d at 1008).

In making this determination, district courts must typically consider such factors
as "whether: (1) the decision was the result of a reasoned and principled process, (2) is
consistent with any prior interpretations by the plan administrator, (3) is reasonable in
light of any external standards, and (4) is consistent with the purposes of the plan." *Id.*
(quoting *Flinders,* 491 F.3d at 1193).  This assessment closely parallels the type of
review the Supreme Court recently contemplated in *Glenn* for assessing the weight of a
"conflict-of-interest" factor in determining whether an administrator abused its discretion
in denying a claim.  *See Weber*, 541 F.3d at 1010 (noting that "[t]his approach mirrors
the *Glenn* Court's method of accounting for the conflict-of-interest factor").  As the *Glenn*
Court recited:

> [A] conflict of interest . . . should prove more important (perhaps of great
> importance) where circumstances suggest a higher likelihood that it
> affected the benefits decision, including, but not limited to, cases where an
> insurance company administrator has a history of biased claims
> administration.  It should prove less important (perhaps to the vanishing
> point) where the administrator has taken active steps to reduce potential
> bias and to promote accuracy, for example, by walling off claims
> administrators from those interested in firm finances, or by imposing
> management checks that penalize inaccurate decision making irrespective
> of whom the inaccuracy benefits.

*Id.* at 2351 (internal citations omitted).

In light of this conflicting Tenth Circuit authority, district courts in this circuit have
reached inconsistent conclusions regarding the availability of extra-record discovery in

cases governed by a deferential standard of review.  Some courts have read the Tenth

Circuit's apparent prohibition on extra-record discovery as ironclad, barring even

discovery into the seriousness of a plan administrator's purported conflict of interest.

*See, e.g.*, *Lafayette v. Cobb*, 385 F. Supp. 2d. 1162, 1167 (D.N.M. 2005) ("[T]here is no

authority for [the Court exercising its discretion to supplement the administrative record]

where the Court employs a deferential standard of review, even where that standard is

changed by the insurer's conflict of interest"); *Spangler v. Unum Life Ins. Co of Am.*,

38 F. Supp. 2d 952, 957 (N.D. Okla. 1999) (disallowing extra-record discovery on a

conflict of interest issue because, under persuasive Eighth Circuit law, "conflict of

interest . . . will usually be apparent on the face of [the] administrative record and

therefore district court[s] rarely needs to permit discovery" [citation omitted]).

By contrast, other courts have read the Tenth Circuit's apparent prohibition on

extra-record discovery as flexible, permitting discovery into the seriousness of a

potential conflict of interest, even if not into the merits of a plaintiff's underlying claim.

*See, e.g.*, *Paul v. Hartford Life and Accident Ins. Co.*, No. 08–cv–00890–REB–MEH,

2008 WL 2945607, at *2 (D. Colo. July 28, 2008) ("[W]hile it would not be proper to

allow Plaintiff to conduct discovery directed toward the factual merits of his claim, this

Court will permit limited discovery related to the alleged conflict of interest in this case

and to the policies and procedures used by [Defendant] to make its decision.");

*Buchanan v. Reliance Standard Life Ins. Co.*, 5 F. Supp. 2d 1172, 1181 (D. Kan. 1998)

(precluding "new evidence relating to the merits of the plaintiff's claim," but permitting

"new evidence on the narrow issue of the manner in which the defendant made the [claim] decision, so that the court may determine whether the defendant acted arbitrarily in making that decision").

The Tenth Circuit has itself exhibited a variety of this judicial schizophrenia by both: (1) repeating its determination that district courts must review a plan administrator's decision upon the administrative record; and (2) simultaneously lamenting the fact that the record on appeal lacks sufficient evidence for the Court to assess the seriousness of a purported conflict of interest. *See, e.g., Weber*, 541 F.3d at 1011 (repeating the factors to be considered in assessing the seriousness of a conflict of interest, but noting that "the record reveals little about [Defendant's] claims assessment process, so we are left to our own analytic devices"); *Wolberg v. AT&T Broadband Pension Plan*, 123 F. App'x 840, 846 & n.3 (10th Cir. 2005) (criticizing a plaintiff for not establishing the seriousness of a conflict of interest, and for not pursuing discovery on this point).

This Court finds that, in the face of the Tenth Circuit's conflicted authority, the Court's apparent prohibition on extra-record discovery must be read as applying only to that discovery directed at uncovering additional evidence of a claimant's eligibility for benefits. This interpretation comports with the original purpose behind the Tenth Circuit's adoption of the apparent prohibition, which traces to cases in which the Court explicitly considered whether plaintiffs could augment the administrative record with after-developed evidence probative of their eligibility for benefits. *See Sandoval*, 967

F.2d at 380–81; *Woolsey*, 934 F.2d at 1460. Moreover, this reading of Tenth Circuit precedent saves the Court's jurisprudence pertaining to the seriousness of a conflict of interest from becoming a dead letter by: (1) requiring district courts to assess the seriousness of a conflict of interest in reference to four well-defined factors; and (2) preventing the parties from discovering evidence that would empower the district courts to conduct this review. *See, e.g.*, *Weber*, 541 F.3d at 1010 (requiring courts to assess, *inter alia*, whether: (1) "the decision was the result of a reasoned and principled process;" and (2) "is consistent with any prior interpretations by the plan administrator"). Finally, this reading comports with the Supreme Court's recent pronouncement in *Glenn* that the weight of a conflict of interest should be assessed in reference to various non-exclusive factors that normally would not appear on the face of an administrative record. *See* 128 S.Ct. at 2351 (contemplating the assessment of such non-exclusive factors as whether: (1) "the insurance company administrator has a history of biased claims administration," and (2) "the administrator has taken active steps to reduce potential bias and promote accuracy").

Based on the foregoing, the Court finds that the magistrate judge's order denying all extra-record discovery was contrary to law. 28 U.S.C.A. § 636(b)(1)(A) (2006); Fed.R.Civ.P. 72(a) (2008). Accordingly, the Court vacates the May 19, 2008, scheduling order, and directs the magistrate judge to enter a new scheduling order consistent with the findings of this order. Moreover, the Court observes that, in determining the permissible scope of discovery in this case going forward, the

magistrate judge shall exercise his sound discretion in accordance with the dictates of Fed.R.Civ.P. 26(b).

**3.    Conclusion**

Based on the foregoing, the Court hereby ORDERS that:

1.    Plaintiff's motion for partial summary judgment (Doc. #20) is DENIED to the extent that this motion sought a determination from the Court that Plaintiff's claims are governed by a *de novo* standard of review;

2.    Plaintiff's objections to the magistrate judge's order (Doc. # 12) are SUSTAINED;

3.    The Court's May 19, 2008, scheduling order (Doc. #10) is VACATED; and

4.    The magistrate judge is directed to enter a new scheduling order consistent with the findings of this order.

DATED:  December   16  , 2008

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge